IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON DIAMOND, | ) | |
| | ) | Civil Action No.  2:23-cv-361 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF PITTSBURGH | ) | |
| MEDICAL CENTER (UPMC), | ) | |
| a Pennsylvania non-profit corporation, | ) | |
| WESTERN PSYCHIATRIC | ) | |
| INSTITUTE and CLINIC, a division of | ) | |
| UPMC, HEATHER SICKMUND, an | ) | |
| individual, F/LNU, an individual, | ) | |
| JOHN/JANE DOE(S), individuals | ) | |
| unknown in name, number and gender, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | Electronically filed |

COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiff, AARON DIAMOND, by and through his attorneys, LAW

OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI,

ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby files this Complaint in a Civil

Action, as follows:

JURISDICTION AND VENUE

1.    This is an action for the redress of grievances and in vindication of civil rights guaranteed

to the Plaintiff under the Americans with Disabilities Act,  42 U.S.C. § 12202 et seq.

Supplemental jurisdiction over Plaintiff's state law claims is also proper pursuant to 28 U.S.C.A.

§ 1367.

2.    Venue is proper under 28 U.S.C.A. § 1391(b).  All claims set forth herein arose in the

Western District of Pennsylvania.

PARTIES

3.      Plaintiff, Aaron Diamond, is an adult individual who resides in Lehigh County,

Pennsylvania.  At all times relevant to this action, Plaintiff was a resident of Allegheny County,

Pennsylvania, and was an employee of Defendants University of Pittsburgh Medical Center

("UPMC"), and Western Psychiatric Institute and Clinic ("Western Psych").

4.      Defendant UPMC is a Pennsylvania non-profit corporation located at 200 Lothrop Street,

Pittsburgh, Pennsylvania, and, at all times relevant hereto, acted by and through its officers,

managers, employees, agents and assigns, acting in the full scope of their office, position,

employment, agency and assignment.

5.      Defendant Western Psych is a division of Defendant UPMC, and provides mental health

clinical care to patients, and, at all times relevant hereto, acted by and through its officers,

managers, employees, agents and assigns, acting in the full scope of their office, position,

employment, agency and assignment. (Defendants UPMC and Western Psych will hereinafter

collectively be referred to as the "hospital Defendants.")

6.      Defendant Heather Sickmund is and, at all times relevant hereto, was an employee of the

hospital Defendants, acting within the full scope of her employment, and who, at all times

relevant hereto, was Plaintiff's immediate supervisor.  Defendant Sickmund participated in the

improper and unlawful conduct described herein.

7.      Defendant F/LNU is and, at all times relevant hereto, was an employee of the hospital

Defendants, acting within the full scope of her employment, and who, at all times relevant

hereto, was the hospital Defendants' weekend supervising staffing manager.  Defendant F/LNU

participated in the improper and unlawful conduct described herein.

8.     Defendants John/Jane Doe(s) are individuals unknown in name, number and gender, all of whom are employees of the hospital Defendants, who, at all times relevant to this action acted within the scope of their employment, and who participated in the improper and unlawful conduct described herein.

9.     At all times relevant hereto, individual Defendants Sickmund , F/LNU , and John/Jane Doe(s) each participated in the improper and unlawful conduct described herein while acting in the course and scope of their employment with the hospital Defendants, thereby creating liability in the hospital Defendants for the injuries and damages to the Plaintiff as described herein under the doctrine of respondeat superior.

## FACTUAL ALLEGATIONS

10.    Plaintiff, Aaron Diamond, began his employment with the hospital Defendants in or about 2017.  At the time of the events described herein, Plaintiff was employed as a charge nurse in Defendant Western Pscyh's eating disorder unit.

11.    Through coercion by various employees of the hospital Defendants, Plaintiff was forced to resign his employment from the hospital Defendants on or about September 30, 2021.

12.    Plaintiff suffers from a number of mental impairments that substantially limit one or more major life activity, and has suffered from these impairments for most of his life.  These impairments include, but are not limited to Attention Deficit Hyperactivity Disorder (ADHD), Dyslexia, as well as a non-specific cognitive learning disability.  This learning disability affects Plaintiff's speech and communications skills such that Plaintiff's speech is slow, and frequently slurred, giving the false appearance that the Plaintiff is under the influence of drugs or alcohol.

13.    When Plaintiff was hired by the hospital Defendants, he fully disclosed the nature and extent of his disabilities to his superiors, as well as to members of Defendant Western Psych's

human resources department.  At all times relevant hereto, various employees of the hospital

Defendants were aware of Plaintiff's disability, including various members of the hospital

Defendants' supervisory and management staff, including, but not limited to Plaintiff's

immediate supervisor, Defendant Sickmund. The hospital Defendants accommodated Plaintiff's

disability during his employment.

14.     On numerous occasions, including, but not limited to the incident described in the

following paragraph, various employees of the hospital Defendants, including, but not limited to

Defendants Sickmund and F/LNU , as well as one or more John/Jane Doe Defendants, have

witnessed the speech and communications problems caused by the Plaintiff's aforementioned

disabilities, and have taken no action or report against the Plaintiff as a result.  At the time of the

incident in question, these individuals were therefore well aware of the effects of the

aforementioned disabilities on the Plaintiff's speech and communication, as those effects were

manifest on a regular basis.

15.     On or about March 6, 2021, Plaintiff was the scheduled "charge nurse" for his shift in the

eating disorder unit.  The charge nurse for any given shift in any given unit of the hospital

Defendants is responsible to supervise and direct the actions of the various other nurses assigned

to that shift and that unit.  Plaintiff's aforementioned disabilities did not prevent him from

properly and fully performing his duties as a nurse, and specifically as a charge nurse, for the

hospital Defendants.

16.     On or about March 6, 2021, when the Plaintiff arrived for the beginning of his shift, he

immediately became aware of a patient who was not receiving proper medical care and attention.

Specifically, Plaintiff observed a female patient who suffered from an eating disorder, who was

receiving intravenous (IV) fluids which were critical to the patient's health and survival, and whose IV fluids were nearly exhausted.

17.     The fact that the aforementioned patient was not being attended to properly caused many of the other patients in the area to become emotionally distraught and volatile, thereby increasing the risk to patient safety within the unit.

18.     As a result of the aforementioned facts, the Plaintiff took immediate, urgent steps to effect the replenishment of the IV fluids described above before the patient suffered a severe, possibly fatal reaction.  The Plaintiff was able to resolve this treatment issue, thereby ensuring the safety of the patient, and also thereby calming the emotional reactions of other patients as described above.

19.     Throughout the process described above, the Plaintiff remained calm and focused on accomplishing the task of providing the patient with the proper care necessary, including the replenishment of her IV fluids.

20.     After accomplishing the aforementioned task, the Plaintiff was angry and frustrated by the situation, but remained professional and proper in all of his actions thereafter.

21.     The Plaintiff immediately reported the event to various employees of the hospital Defendants, including, but not limited to Defendants Sickmund and F/LNU, as well as one or more John/Jane Doe Defendants.  While reporting the incident, Plaintiff's speech and communication were affected by the aforementioned disabilities from which he suffered.

22.     Shortly after making the aforementioned report, Plaintiff was asked to meet with various employees of the hospital Defendants, including, but not limited to Defendants Sickmund and F/LNU, together with one or more of the John/Jane Doe Defendants.  Plaintiff believed that the purpose of this meeting was to discuss the incident described above which led to the

endangerment of the aforementioned patient. Instead, these employees, including Defendants Sickmund and F/LNU, began directing comments and questions to the Plaintiff regarding his mental condition, implying and/or asserting that the Plaintiff's mental condition was unstable, and that the Plaintiff was impaired by drugs and/or alcohol.

23.     The Plaintiff's communication to the aforementioned employees was impacted by the effects of his disability as aforementioned. These employees knew, or should have known, that the communication problems exhibited by the Plaintiff under these circumstances were the result of his disability, and not as a result of his being impaired by drugs and/or alcohol.

24.     At that time, Plaintiff was not suffering the adverse effects of alcohol or illicit drugs. Plaintiff was not under the influence of any substance other than medications for which Plaintiff had a valid prescription from a physician. Plaintiff's condition was in no way impaired at that time, and Plaintiff was fully able to function and perform the duties of his assignment.

25.     At that time, Defendant Sickmund requested that the Plaintiff submit to providing a blood sample to her. Plaintiff believes, and therefore avers that this request was for the purpose of determining whether or not Plaintiff was under the influence of alcohol and/or an illicit drug.

26.     The Plaintiff refused the request to give a blood sample.

27.     At that time, the Plaintiff was a member of a labor union that represented the nurses employed by the hospital Defendants. Plaintiff believes, and therefore avers, that the collective bargaining agreement between the union and the hospital Defendants provided that union members had the right to request, and have present, a union representative when placed in circumstances such as those described herein, including, but not limited to when being required to provide a blood sample by management personnel.

28.     Upon being requested to provide a blood sample, the Plaintiff requested that he be provided union representation during the aforementioned confrontation.  The individual Defendants present at the scene, including, but not limited to, Defendants Sickmund and F/LNU, refused to provide the Plaintiff with a union representative.

29.     During the discussion that followed the above-described incident, the aforementioned employees enlisted the aid of multiple John/Jane Doe Defendants employed by the hospital Defendants as security personnel to attend the discussion, and to exercise physical control of the Plaintiff.

30.     When the Plaintiff realized that the aforementioned discussion was not going to address the incident in question, but rather became a pointed inquiry as to the Plaintiff's condition, the Plaintiff indicated that he intended to leave the hospital for a short break to relax and take in some fresh air.  For that reason, the Plaintiff requested of Defendant Sickmund that he be permitted to take a ten minute break from his duties.  By her actions, Defendant Sickmund declined Plaintiff's request for a break from his duties.

31.     As the Plaintiff attempted to leave the unit to take the aforementioned break, he entered the elevator on the unit, where he was immediately joined by some or all of the employees present for the aforementioned discussion, including, but not limited to, Defendants Sickmund and F/LNU, as well as multiple John/Jane Doe Defendants, including multiple security personnel, and including John/Jane Doe Defendants who are physicians.  Although the Plaintiff attempted to take the elevator to the ground floor, one of the hospital Defendants' employees pushed the elevator button for the fifth floor of Western Psych, which was and is a floor utilized by security personnel to, among other things, secure persons deemed to be a security risk.

32.     At that time, the Plaintiff posed no security threat to anyone in the facility.

33.    As the Plaintiff attempted to use the stairway leading from the fifth floor to the ground floor, he was surrounded by various of the aforementioned employees, including, but not limited to Defendants Sickmund and F/LNU, as well as multiple John/Jane Doe Defendants who were security personnel, all of whom restricted the Plaintiff's freedom of movement, thereby prohibiting the Plaintiff from leaving the facility.

34.    At the time of the events described above, the Plaintiff was wearing an employee security badge which is used by Western Psych employees to permit access to and from the hospital.

35.    As the Plaintiff was attempting to use the stairway to leave the building, and while surrounded by the aforementioned hospital Defendants' employees, Plaintiff's security badge was violently ripped off of his person by one or more of the employees described herein.  In addition, at that same time, Plaintiff's keys were forcibly taken from him by one or more of the aforementioned employees.

36.    At or about the same time, a hospital Defendant employee asked the Plaintiff to take a dosage of an anti-psychotic medication which is used to sedate mental health patients.  The Plaintiff refused the aforesaid medication.

37.    At or about that same time, the Plaintiff again asked to have his union representative present.  Defendant Sickmund told the Plaintiff that his union representative would not be coming to meet with him.

38.    At that same time, Defendant Sickmund threatened the Plaintiff that if he did not voluntarily take the aforementioned medication, he would be forcibly restrained.

39.    The Plaintiff again refused the medication.

40.    As a result of the Plaintiff's refusal to take the aforementioned medication, multiple hospital Defendant employees placed their hands upon the Plaintiff and forcibly restrained him.

While the Plaintiff was restrained, one or more hospital Defendant employees injected into the Plaintiff's buttock an anti-psychotic medication. The Plaintiff believes, and therefore avers, that the medication that was injected into the Plaintiff against his will was Zyprexa.

41.     After the Plaintiff was forcibly injected with the aforementioned drug, against his will, he was forcibly restrained on a hospital gurney in a "four points" restraint.

42.     After the forcible injection described above, the Plaintiff lost consciousness. The Plaintiff did not regain consciousness until sometime on or about March 7, 2021.

43.     During the subject incident, including, but not limited to the period of time when the Plaintiff was unconscious, one or more of the aforementioned hospital Defendant employees made application to officials of the hospital Defendants to subject the Plaintiff to an involuntary emergency mental health evaluation pursuant to the Mental Health Procedures Act (MHPA), 50 Pa.C.S. § 302. This action is commonly referred to as being "302'd."

44.     Medical personnel, including one or more physicians employed by the hospital Defendants, performed a 302 analysis on the Plaintiff without his permission or consent.

45.     At no time prior to, during, or after the 302 examinations of the Plaintiff did any individual Defendant herein explain to the medical personnel performing the 302 analyses on the Plaintiff, that the Plaintiff suffered from the disabilities described hereinbefore above.

46.     As a result of being 302'd, the Plaintiff was subjected to the following invasive testing and treatment, all of which was against his will, and contrary to the Plaintiff's expressed wishes:

    A.     A quantity of the Plaintiff's blood was drawn from his body and was subjected to various analyses, including a toxicology assessment, by hospital personnel;

    B.     The Plaintiff was involuntarily administered various anti-psychotic, sedative and anti-nausea medications, including, but not limited to Haloperidol, Lorazepam, Ativan and Ondasetron;

C.   A quantity of the Plaintiff's urine was involuntarily drawn from his body, and, without the Plaintiff's consent, was subject to various laboratory analyses;

D.   The Plaintiff was involuntarily administered a computerized tomography (CT) scan;

E.   The Plaintiff was involuntarily administered a computed tomography angiography (CTA) scan;

F.   The Plaintiff was forced to provide a complete medical history to hospital personnel;

G.   The Plaintiff was involuntarily administered an electrocardiography (EKG);

H.   The Plaintiff was forced to endure a suicide risk severity analysis;

I.   The Plaintiff was forced to undergo a complete mental health status examination; and

J.   The Plaintiff was forced to endure a full examination of his unclothed body by various hospital personnel.

47.   As a direct and proximate result of the conduct of the aforementioned, while the Plaintiff was being held against his will for 302 examination, the Plaintiff suffered the following adverse effects of said conduct:

A.   The Plaintiff suffered from tachycardia;

B.   The Plaintiff suffered from dry mucus membranes;

C.   The Plaintiff suffered from diaphoria;

D.   The Plaintiff suffered from nystagmus;

E.   The Plaintiff suffered from hyperreflexia;

F.   The Plaintiff suffered from hypertension;

G.   The Plaintiff suffered from erythematous;

H.   The Plaintiff suffered febrility; and

I.   The Plaintiff suffered severe emotional distress.

48.     At the conclusion of the 302 examination, the attending physician who was primarily responsible for conducting the examination, opined that the Plaintiff was did not qualify for involuntary commitment under section 302 of the MHPA.

49.     As a direct and proximate result of the conduct of the aforementioned, while the Plaintiff was being held against his will for 302 examination, the Plaintiff was falsely diagnosed as suffering from drug related dysarthria.  The Plaintiff believes, and therefore avers, that this misdiagnosis was a result of medical personnel observing the Plaintiff's symptoms related to his disability as described more fully hereinbefore above.

50.     As a direct and proximate result of the conduct of the aforementioned, while the Plaintiff was being held against his will for 302 examination, the Plaintiff was falsely diagnosed as suffering from "substance-induced" psychosis.  The Plaintiff believes, and therefore avers, that this misdiagnosis was a result of medical personnel observing the Plaintiff's symptoms related to his disability as described more fully hereinbefore above.

51.     At the conclusion of the 302 examination, the attending physician who was primarily responsible to conduct the examination, opined that the Plaintiff did not qualify for involuntary commitment under the MHPA, as he did not constitute a danger to himself or others.

52.     Thereafter the Plaintiff was released to the custody of his wife and returned to his home, where he continued to suffer from severe physical, mental and emotional distress as a direct and proximate result of the conduct of the individual Defendants as described hereinbefore above.

53.     Plaintiff continues to the present suffering from severe physical, mental and emotional distress as a direct and proximate result of the conduct of the individual Defendants as described hereinbefore above, and he will continue to so suffer for an indefinite period into the future.

54.     At no time was the Plaintiff reprimanded or disciplined, nor did he suffer any adverse consequences related to his employment as a result of the incident which is described more fully hereinbefore above, and which forms the basis of the within action.

55.     Notwithstanding the foregoing, on or about March 10, 2021, a management employee working at the direction of Defendant Sickmund, requested that the Plaintiff return to perform his duties as a charge nurse in Western Psych's eating disorder unit.

56.     Rather than return to his position as aforementioned, the Plaintiff was convinced by representatives of his union to apply for, and collect, short term disability benefits.

57.     On or about September 30, 2021, individuals representing the Plaintiff's union, acting in conspiracy with one or more of the Defendants named or described above, coerced the Plaintiff into resigning his employment position with the hospital Defendants, causing the Plaintiff great monetary and other losses.

COUNT I:

PLAINTIFF v. ALL DEFENDANTS

<u>VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C.S. § 12182</u>

58.     Plaintiff incorporates by reference Paragraphs 1 through 57 as though fully set forth at length herein.

59.     The Americans with Disabilities Act, 42 U.S.C.S. § 12182 et seq., provides disabled individuals redress for discrimination by places of public accommodation.

60.     Pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C.S. § 12182 et seq., Plaintiff had the right to all services, facilities, privileges, and advantages provided or made available by any place of public accommodation.

61.     Plaintiff has a permanent mental health disability under the ADA.

62.     The hospital Defendants are places of public accommodation under the ADA.

63.     The hospital Defendants publish and maintain specific policies designed to protect disabled individuals who are patients in their facilities from improper, discriminatory conduct based upon their disability.

64.     By involuntarily seizing the Plaintiff, anesthetizing him, and performing all of the invasive testing and other actions described hereinbefore above, the Plaintiff became a "patient" of the hospital Defendants against his will.

65.     By the acts more fully described hereinafter below, the Defendants, and each of them, denied to the Plaintiff, as a patient of the hospital Defendants, the full enjoyment of the services, privileges, advantages and accommodations which they offer to members of the general public.

66.     By subjecting the Plaintiff to a 302 examination, together with all of the actions directed toward the Plaintiff as set forth hereinbefore above, all of which were done without the Plaintiff's approval or informed consent, and against the specific, expressed objection of the Plaintiff, the hospital Defendants denied to the Plaintiff all of the services, facilities, privileges, and advantages, provided or made available by the hospital Defendants to members of the general public.

67.     The acts perpetrated against the Plaintiff, as described more fully hereinbefore above, were perpetrated by the actions of the individual Defendants hereto, when each of them knew, or should have known, that the Plaintiff suffered from the disabilities described more fully hereinbefore above, and that the Plaintiff's appearance and actions related directly to the physical manifestations of Plaintiff's disability, and not to any improper drug or alcohol use.

68.     Despite the knowledge by the individual Defendants that the Plaintiff was not suffering from drug or alcohol abuse on the date in question, the individual Defendants permitted the

wrongful, unlawful, abusive conduct described above to be perpetrated on the Plaintiff, using the excuse of Plaintiff's disability related conduct to permit the abuse of the Plaintiff as described more fully hereinbefore above.

69.    By the aforementioned actions of the Defendants, and each of them, Plaintiff was subjected to discrimination on the basis of his disability in violation of the ADA.

70.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated and executed by the Defendants, Plaintiff suffered the following injuries and damages:

    a.    violation of his rights under the ADA to be free from discrimination based on his disability;

    b.    physical and psychological pain and suffering;

    c.    fright, horror and shock;

    d.    deprivation of freedom for more than twenty-four hours;

    e.    emotional trauma and suffering; and

    f.    economic damages related to any and all medical and/or other consequential costs.

71.    The actions of the Defendants, and each of them, were undertaken deliberately, intentionally and/or willfully, and/or with a reckless disregard for the rights, privileges and advantages of the Plaintiff, thereby subjecting the Defendants, and each of them, to punitive damages.

WHEREFORE, the Plaintiff demands compensatory general damages against Defendants, and each of them, including, but not limited to damages for pain, suffering and inconvenience in an amount proven at trial; compensatory special damages including, but not limited to, medical expenses and lost income; costs of suit; reasonable attorney's fees as

permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFF v. ALL DEFENDANTS

FALSE IMPRISONMENT

72.     Plaintiff incorporates by reference Paragraphs 1 through 71 as though fully set forth at length herein.

72.     As described more fully hereinbefore above, the Defendants, and each of them, falsely, unlawfully and improperly detained the Plaintiff during the aforementioned incident, to the great damage and detriment of the Plaintiff, as described more fully herein.

73.     As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated and executed  by the Defendants, Plaintiff suffered the following injuries and damages:

       a.     violation of his rights under Pennsylvania common law;

       b.     physical and psychological pain and suffering;

       c.     fright, horror and shock;

       d.     deprivation of freedom for more than twenty-four hours;

       e.     emotional trauma and suffering; and

       f.     economic damages related to any and all medical and/or other consequential costs.

74.     The actions of the Defendants, and each of them, were undertaken deliberately, intentionally and/or willfully, and/or with a reckless disregard for the rights, privileges and

advantages of the Plaintiff, thereby subjecting the Defendants, and each of them, to punitive damages.

WHEREFORE, the Plaintiff demands compensatory general damages against Defendants, and each of them, including, but not limited to damages for pain, suffering and inconvenience in an amount proven at trial; compensatory special damages including, but not limited to, medical expenses and lost income; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; together with punitive damages and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT III

PLAINTIFF v. ALL DEFENDANTS

ASSAULT/BATTERY

75.    Plaintiff incorporates by reference Paragraphs 1 through 74 as though fully set forth at length herein.

76.    The Defendants, and each of them, intentionally attempted by force to do injury and damage to the Plaintiff, as more fully described hereinbefore above, thereby committing an assault upon the Plaintiff.

77.    The Defendants, and each of them, committed the violence attempted by the above-described assault upon the person of the Plaintiff, as more fully described hereinbefore above, thereby committing a battery upon the Plaintiff.

78.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated and executed by the Defendants, Plaintiff suffered the following injuries and damages:

        a.    violation of his rights under Pennsylvania common law;

        b.    physical and psychological pain and suffering;

        c.    fright, horror and shock;

        d.    deprivation of freedom for more than twenty-four hours;

        e.    emotional trauma and suffering; and

        f.    economic damages related to any and all medical and/or other consequential costs.

79.    The actions of the Defendants, and each of them, were undertaken deliberately, intentionally and/or willfully, and/or with a reckless disregard for the rights, privileges and advantages of the Plaintiff, thereby subjecting the Defendants, and each of them, to punitive damages.

WHEREFORE, the Plaintiff demands compensatory general damages against Defendants, and each of them, including, but not limited to damages for pain, suffering and inconvenience in an amount proven at trial; compensatory special damages including, but not limited to, medical expenses and lost income; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; together with punitive damages and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IV:

PLAINTIFF v. ALL DEFENDANTS

<u>INVASION OF PRIVACY</u>

80.    Plaintiff incorporates by reference Paragraphs 1 through 79 as though fully set forth at length herein.

81.    As described more fully hereinbefore above, the Defendants, and each of them, falsely, unlawfully and improperly detained the Plaintiff during the aforementioned incident; physically, mentally and emotionally committed assault and battery upon the Plaintiff; and subjected the Plaintiff to highly offensive, highly invasive conduct related to the Plaintiff's body and bodily fluids, to the Plaintiff's private medical information, and, generally, to the Plaintiff's private, personal business to the great damage and detriment of the Plaintiff, as described more fully herein.

82.    The conduct of the individual Defendants, and each of them, as more fully described hereinbefore above, was intentional and deliberate.

83.    The above-described conduct constituted an intentional intrusion upon the Plaintiff's solitude and/or seclusion, and was an intentional intrusion upon the Plaintiff's private affairs and concerns.

84.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated and executed  by the Defendants, Plaintiff suffered the following injuries and damages:

      a.      violation of his rights under Pennsylvania common law;

      b.      physical and psychological pain and suffering;

      c.      fright, horror and shock;

      d.      deprivation of freedom for more than twenty-four hours;

      e.      emotional trauma and suffering; and

      f.      economic damages related to any and all medical and/or other consequential costs.

85.     The actions of the Defendants, and each of them, were undertaken deliberately, intentionally and/or willfully, and/or with a reckless disregard for the rights, privileges and advantages of the Plaintiff, thereby subjecting the Defendants, and each of them, to punitive damages.

WHEREFORE, the Plaintiff demands compensatory general damages against Defendants, and each of them, including, but not limited to damages for pain, suffering and inconvenience in an amount proven at trial; compensatory special damages including, but not limited to, medical expenses and lost income; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; together with punitive damages and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT V

PLAINTIFF v. ALL DEFENDANTS

TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

86.     Plaintiff incorporates by reference Paragraphs 1 through 85 as though fully set forth at length herein.

87.     By virtue of the collective bargaining agreement between the union representing the Plaintiff and the hospital Defendants, the Plaintiff, as third-party beneficiary of that agreement, at

all times relevant to this case had the right to be represented by an individual on behalf of Plaintiff's union during the encounter as more fully described hereinbefore above.

88.      By refusing to permit the Plaintiff union representation during the aforementioned incident, the Defendants, and each of them, tortiously interfered with the Plaintiff's contractual relationship with the hospital Defendants, to Plaintiff's great injury and detriment.

89.      As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated and executed  by the Defendants, Plaintiff suffered the following injuries and damages:

    a.      violation of his rights under Pennsylvania common law;

    b.      physical and psychological pain and suffering;

    c.      fright, horror and shock;

    d.      deprivation of freedom for more than twenty-four hours;

    e.      emotional trauma and suffering; and

    f.      economic damages related to any and all medical and/or other consequential costs.

90.      The actions of the Defendants, and each of them, were undertaken deliberately, intentionally and/or willfully, and/or with a reckless disregard for the rights, privileges and advantages of the Plaintiff, thereby subjecting the Defendants, and each of them, to punitive damages.

        WHEREFORE, the Plaintiff demands compensatory general damages against Defendants, and each of them, including, but not limited to damages for pain, suffering and inconvenience in an amount proven at trial; compensatory special damages including, but not limited to, medical expenses and lost income; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; together with punitive

damages and such other relief, including injunctive and/or declaratory relief, as this Court may

deem proper.

JURY TRIAL DEMANDED


Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone_____
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiff*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: March 5, 2023