IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON DIAMOND, | Civil Action No. 2:23-cv-361 |
| Plaintiff, | |
| v. | *Filed Electronically* |
| UNIVERSITY OF PITTSBURGH MEDICAL CENTER (UPMC), a Pennsylvania non-profit corporation, WESTERN PSYCHIATRIC INSTITUTE and CLINIC, a division of UPMC, HEATHER SICKMUND, an individual, F/LNU, an individual, JOHN/JANE DOE(S), individuals unknown in name, number and gender, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

While working a shift at Western Psychiatric Institute and Clinic in March of 2021, Plaintiff Aaron Diamond was approached by his hospital coworkers who believed that his concerning behavior warranted emergent mental health treatment. Through the mental health interventions ordered, Plaintiff was converted from an employee of the hospital to its patient. Plaintiff contends that these interventions, taken over his objections, were not warranted. That is the basis for this lawsuit.

This is a straightforward medical liability case about the appropriateness of mental health interventions. However, Plaintiff has chosen to plead this case as a disability discrimination matter. According to the Complaint, Plaintiff has several "mental impairments" that affect his communication skills. These impairments, allegedly, give "the false impression that the Plaintiff is under the influence of drugs or alcohol." But a legal action involving an allegedly disabled individual is not always a disability case. Here,

whether Defendants improperly initiated an assessment for involuntary mental health treatment is unrelated to any claimed disability. Plaintiff's Complaint fails to allege that he was discriminated against on the basis of disability or that he was deprived of services from the hospital on account of disability. Rather, Plaintiff has alleged that he was unwillingly detained for mental health interventions and that he happens to be disabled. That is not a legally valid discrimination lawsuit.

Plaintiff has asserted five causes of action in his Complaint — Count I (Violation of the ADA; Title III — Public Accommodation); Count II (False Imprisonment); Count III (Assault/Battery); Count IV (Invasion of Privacy); and, Count V (Tortious Interference with Contractual Relations). For various reasons, each of these claims fails as a matter of law. But the fundamental flaw with Plaintiff's Complaint is his attempt to transform a case about alleged improper medical treatment[1] into a case about disability. For the reasons set forth herein, Plaintiff's Complaint should be dismissed with prejudice.

## I. FACTUAL BACKGROUND

According to the Complaint, Plaintiff was a registered nurse at Western Psychiatric Institute and Clinic (WPIC) from 2017 until September of 2021. (ECF Doc. 1 ¶¶ 10-11). On March 6, 2021, Plaintiff was working as a charge nurse on the eating disorder unit of WPIC. (Id. at ¶ 15). After reporting a patient safety issue, Plaintiff was encountered by several coworkers who raised concerns about his mental condition and possible impairment by drugs or alcohol. (Id. at ¶¶ 21-22). Plaintiff claims that such outward manifestations of impairment and instability were actually the result of a disability. (Id. at ¶ 23). According to

---

[1] Plaintiff's medical claims fail under the guises of the Pennsylvania Mental Health Procedure Act (MHPA). The MHPA includes an immunity provision that precludes liability in the absence of willful misconduct or gross negligence. 50 P.S. § 7114(b). Leight v. Univ. of Pittsburgh Physicians, 243 A.3d 126, 140 (Pa. 2020).

Plaintiff, he suffers from ADHD, dyslexia, and a "non-specific cognitive learning disability." (Id. at ¶ 12). These conditions cause him to speak slowly and to slur his words. (Id.). Plaintiff alleges that, during the conversations with coworkers, he was denied the ability to go leave the building and was asked to submit a blood sample and take an oral dosage of antipsychotic medication — both of which were refused. (Id. at ¶¶ 26, 30, 35-36).

Plaintiff was a member of a labor union. (Id. at ¶ 27). Pursuant to the Collective Bargaining Agreement between the hospital and the union, Plaintiff believed that he was entitled to have a union representative present during the confrontation with coworkers. (Id.). After being asked by Defendants to provide a blood sample, Plaintiff requested that he be provided union representation. (Id. at ¶ 28). A short time later, Plaintiff refused to take a dose of an anti-psychotic medication. (Id. at ¶ 36). Plaintiff then again asked for union representation. (Id. at ¶ 37). That request was denied. (Id. ¶ 37).

Plaintiff alleges that, following the initial events, he was physically restrained by WPIC employees and injected with an antipsychotic medication. (Id. at ¶ 40). He then underwent an involuntary mental health evaluation pursuant to the MHPA (50 P.S. § 7302) to determine whether he met the criteria for inpatient mental health commitment. (Id. ¶ 43). Plaintiff asserts that he suffered physical, mental and emotional distress as a result of undergoing the MHPA examination. (Id. ¶ 52-53).

Plaintiff initiated the instant action on March 5, 2023 by the filing of a Complaint. On April 7, 2023, pursuant to the procedures set forth in the Pennsylvania Rules, Defendants filed a Notice of Intent to Seek Dismissal of Professional Liability Claims for Failure to File a Certificate of Merit. (ECF Doc. 8). No Certificates of Merit have been filed to date. For the reasons set forth herein, Plaintiff's Complaint should be dismissed with prejudice.

## II. **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the allegations in the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). "In deciding a Rule 12(b)(6) motion to dismiss, the court does not opine whether plaintiffs are likely to prevail on the merits; rather, the court accepts as true all well-pleaded factual allegations and views them in a light most favorable to plaintiffs." Papurello v. State Farm Fire & Cas. Co., 144 F. Supp. 3d 746, 760 (W.D. Pa. 2015). While a plaintiff need not set forth detailed factual allegations in his complaint to survive defendant's Rule 12(b)(6) motion to dismiss, plaintiff must provide more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). A court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

## III. **ARGUMENT**

**A. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER TITLE III OF THE AMERICANS WITH DISABILITIES ACT.**

Count I asserts a claim for violation of Title III of the ADA. (ECF Doc. 1 at Count I (citing 42 U.S.C. § 12182)). Title III of the ADA is intended to prohibit disability discrimination by places of public accommodation (as opposed to discrimination by employers or government

4

entities). Specifically, Title III seeks to ensure "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182. A hospital, such as WPIC, qualifies as a place of "public accommodation." 42 U.S.C. § 12181(7)(F). Although Plaintiff can satisfy the threshold element that Defendant WPIC is a place of public accommodation, the Complaint is devoid of any allegations bearing on the other elements of a Title III claim. And even if with any additional factual allegations, Plaintiff's Title III claim is nevertheless deficient because the statute does not authorize recovery of monetary damages. Because Plaintiff has not set forth a basis for permissible injunctive relief, Count I should be dismissed.

      **1.    Plaintiff has failed to state a claim pursuant to the ADA because Title III of the Act does not authorize recovery of monetary damages.**

The Title III claim must be dismissed because monetary damages are not available as a matter of law. See Doe v. Law School Admission Council, Inc., 791 Fed. Appx. 316, 319 (3d Cir. 2019) (noting that "damages are not available under Title III of the ADA"); Giterman v. Pocono Medical Center, 361 F. Supp. 3d 392 (M.D. Pa. 2019) (noting that "plaintiff is not entitled to monetary damages with respect to her claim under Title III of the ADA, since such relief is improper"); Anderson v. Macy's Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (finding that private plaintiffs may not obtain monetary damages under Title III of the ADA). Title III of the ADA permits only injunctive relief.

Plaintiff's ADA claim demands "compensatory general damages" for pain and suffering and "compensatory special damages" for economic losses. (ECF Doc. 1 at *ad damnum* clause). Neither of these categories of damages are recoverable in a Title III claim. Accordingly, Plaintiff's claim pursuant to Title III of the ADA must be dismissed.

> **2. Plaintiff lacks standing to pursue injunctive relief pursuant his ADA claim.**

It is indisputable that Title III of the ADA authorizes only injunctive relief. Because Title III only provides for prospective remedies to prevent future harm, courts must consider at the outset whether a plaintiff has standing to pursue injunctive relief. In so doing, "courts look beyond the alleged past violation and consider the possibility of future violations." Giterman, 361 F. Supp. 3d at 405. As revealed by the allegations in the Complaint, Plaintiff lacks standing to pursue such injunctive relief.

The constitutional minimum of standing requires that a plaintiff plead three elements: (1) that plaintiff suffered an "injury in fact"; (2) that there is a causal connection between the injury and the conduct complained of; and, (3) that it is likely — not merely speculative — that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The party invoking federal jurisdiction bears the burden of establishing standing. Id.

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." Id. at 564. In a claim for injunctive relief, there can be no standing without evidence of a "real and immediate threat of repeated injury." Lyons v. City of Los Angeles, 461 U.S. 95, 102 (1983); see also Doe v. Nat'l Bd. of Med. Exam'rs, 210 Fed. Appx. 157, 159-60 (3d Cir. 2006) ("To establish standing in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer *future* injury from the defendant's illegal conduct." (emphasis in original)). Generalized allegations of an intent to "some day" return to the place of the alleged harm are insufficient for standing. Lujan, 504 U.S. at 564. "Such 'some day' intentions . . . do not support a finding of the 'actual or imminent' injury that our cases require." Id.

6

The standing requirement is no less imperative in the Title III context. To establish standing to seek the relief available under Title III of the ADA, "a plaintiff must demonstrate a real or immediate threat that the plaintiff will be wronged again — a likelihood of substantial and immediate irreparable injury." Brown v. Mt. Fuji Japanese Rest., 615 Fed. Appx. 757, 758 (3d Cir. 2015) (internal quotation omitted). It is well-settled that "[a]llegations of continuing emotional consequences arising from violations of Title III of the ADA are not sufficient to satisfy the future injury requirement for standing to pursue injunctive relief." Doe v. Friends Cent. Sch. Corp., 2019 WL 2515977, at *7 (E.D. Pa. June 18, 2019) (citing Lyons, 461 U.S. at 107 n.8); see also McCormick v. Kline, 670 Fed. Appx, 764, 765 (3d Cir. 2016) ("Absent a real and immediate threat of future injury by the defendant, injunctive relief is not an appropriate remedy for the emotional consequences of single prior act.").

Plaintiff has claimed physical and psychological pain and suffering, fright, horror and shock, deprivation of freedom, emotional trauma and suffering, and economic damages related to medical costs — none of which may be redressed by Title III. (ECF Doc. 1 at ¶¶ 70, 73, 78, 84, 89). Although the Complaint mentions in a boilerplate fashion the phrase "injunctive and/or declaratory relief," Plaintiff does not request any specific prospective injunctive relief. Plaintiff's Title III claim must be dismissed on this basis alone.

Nevertheless, even had Plaintiff attempted to seek injunctive relief, he would lack standing to assert such a claim. In order to be entitled to injunctive relief, a plaintiff must show that he or she is likely to suffer from the alleged illegal conduct in the future. A Title III plaintiff can show a sufficient imminent injury through one of two methods — the intent to return method or the deterrent effect doctrine. In other words, the plaintiff must allege that

7

that he intends to return to the public accommodation in the future or that he was deterred from patronizing a public accommodation because of a defendant's failure to comply with the ADA. Giterman, 361 F. Supp. 3d at 405. Neither of these methods for showing imminent injury could apply in this matter. There is no likelihood of future injury because Plaintiff denies that he is mentally ill and will require any additional assessments for psychiatric treatment from Defendants. Plaintiff does not allege that he may require further medical treatment at WPIC or that WPIC will likely discriminate against him in the future because of his disability. Nor does Plaintiff allege any facts which establish a reasonable likelihood that he is deterred from patronizing WPIC due to barriers preventing equal access. And Plaintiff no longer works at WPIC such that his fitness for duty may be questioned again in the future.

Plaintiff's Complaint is devoid of any factual allegations demonstrating a possibility of future injury at the hands of Defendants. Instead, the Complaint alleges a single, isolated incident of alleged past "discriminatory" conduct. As such, Plaintiff cannot establish standing to advance his Title III claim. See Hollinger v. Reading Health Sys., 2016 WL 3762987, at *11 (E.D. Pa. July 14, 2016) (dismissing Title III claim because plaintiff was "not entitled to prospective injunctive relief without a sufficient showing that he is likely to suffer a future injury from the Hospital's allegedly discriminatory conduct").

Plaintiff lacks standing to proceed under Title III. He does not request any prospective injunctive relief — the only relief allowable under Title III. His only alleged damages are continuing emotional damages and monetary damages, neither of which are sufficient to confer standing under Title III. Plaintiff also fails to plead that he is likely to suffer any future injury by WPIC that would be redressed by his requested relief. Accordingly, Count I of the Complaint must be dismissed, with prejudice.

**3. Plaintiff has failed to state a claim pursuant to the ADA because he has not plausibly pleaded that he was discriminated against on the basis of a disability or denied access to public accommodation.**

To state a claim under Title III of the ADA, a plaintiff must show: "(1) discrimination on the basis of a disability, (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation, (3) by the public accommodation's owner, lessor or operator." Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 542-43 (W.D. Pa. 2013). Plaintiff has not pleaded a legitimate discrimination claim under Title III of the ADA.

Plaintiff alleges that, after becoming a patient of WPIC, he was denied the services of the facility offered to the general public. But beyond these threadbare statements, Plaintiff has not attempted to satisfy the elements of a Title III claim. Instead, Plaintiff has challenged the basis for initiating the procedures set forth in the Mental Health Procedures Act; Plaintiff has not set forth a cognizable discrimination claim.

As an initial matter, Plaintiff's Complaint fails to show that he was disabled under the ADA. To constitute a disability, the individual's physical or mental impairment must "substantially limit" one or more major life activities of the individual. 42 U.S.C. § 12102(2). Accordingly, a mere impairment does not equate to disability. Love v. Law Sch. Admission Council, Inc., 513 F. Supp. 2d 206, 226 (E.D. Pa. 2007). In some circumstances, ADHD and learning impairments may qualify as disabilities under the ADA. E.g. Ramsay v. Nat'l Bd. of Med. Exam'rs, 968 F.3d 251 (3d Cir. 2020). But to state a claim under the ADA, the disability must be shown to substantially limit plaintiff's ability to perform major life activities.

The ADA defines disability as, "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an

9

impairment; or (C) being regarded as having such an impairment." Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 512 (3d Cir. 2001) (citing 42 U.S.C. § 12102(2)). Although Plaintiff's Complaint vaguely alleges that various mental impairments "substantially limit" one or more major life activities and that his "speech is slow, and frequently slurred, giving the false appearance that the Plaintiff is under the influence of drugs or alcohol" (ECF Doc. 1 ¶ 12), Plaintiff provides no factual details supporting "substantial" limitations. Plaintiff's conclusory allegations regarding any substantial limitation of one or more major life activity fail to satisfy the pleading standard set forth by the Supreme Court in Twombly and Iqbal. See Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Even if the Complaint contained facts showing disability, Plaintiff still fails to state a claim pursuant to Title III of the ADA. Plaintiff has not alleged that he was discriminated against on the basis of disability. There are no factual averments indicating any discriminatory animus. According to the Complaint, Plaintiff was forced to undergo an involuntary psychiatric assessment because of his disability. (ECF Doc. 1 ¶ 45). But the alleged actions taken against Plaintiff cannot reasonably be attributed to his alleged learning disability or ADHD. Rather, the psychiatric assessment at issue derived from concerns about his mental status and potential impairment. (Id. at ¶ 22).

Despite attempts to recategorize his claims, Plaintiff has actually challenged the medical treatment provided at Defendant WPIC. But allegations of improper medical decision-making are insufficient to state a claim under Title III. See, e.g., Kokinda v. Pennsylvania Dep't of Corr., 663 Fed. Appx. 156, 159 (3d Cir. 2016) (noting that the ADA does not cover inadequate treatment of a disability); Iseley v. Beard, 200 Fed. Appx. 137, 142 (3d

10

Cir. 2006) ("The ADA does not create a remedy for medical malpractice."); Boyd v. City of Philadelphia, 2020 WL 1531454, at *9 (E.D. Pa. Mar. 31, 2020) ("[P]roviding inadequate medical care, even if related to a disability and even if such conduct amounts to negligence, is not actionable discrimination under the ADA."); Lesley v. Chie, 250 F.3d 47, 55 (1st Cir. 2001) ("[A] plaintiff's showing of medical unreasonableness must be framed within some larger theory of disability discrimination.").

Plaintiff has challenged the basis for subjecting him to a mental health examination. As such, Plaintiff's allegations sound in negligent medical care, not disability discrimination. (Id. at ¶¶ 48-51 (outlining the alleged misdiagnosis by defendants)). Because Plaintiff has not plausibly pleaded that he was discriminated against on the basis of his disability, he fails to state a claim under Title III of the ADA.

Finally, Plaintiff has failed to allege denial of "full and equal enjoyment" of services or facilities from Defendants. In fact, Plaintiff's grievance rests on receiving medical treatment — the services provided at WPIC — that he did not want to receive. Accordingly, it is difficult to comprehend how Plaintiff was deprived the services or facilities of WPIC that a non-disabled individual would enjoy. Most Title III litigation centers on architectural barriers. While architectural barriers are not the only basis for a claim under Title III of the ADA (See Matheis v. CSL Plasma, Inc., 936 F.3d 171 (3d Cir. 2019) (plasma donation center failed to show that categorical prohibition on donations by those using psychiatric service animals was a valid safety rule)), the essence of Title III is that public accommodations must provide people with disabilities an equal opportunity to access the goods and services that they offer. A disputed involuntary commitment does not implicate Title III of the ADA.

11

To summarize, to the extent that Plaintiff can show that he suffers from an ADA disability, Plaintiff still has not alleged facts that he was discriminated against on the basis of that disability or that he was deprived of the services offered by WPIC. Plaintiff has set forth a grievance about medical treatment he received, not the medical treatment he was denied. Because Plaintiff's allegations do not state an actionable claim of discrimination, Count I of the Complaint should be dismissed with prejudice.

### 4. In the alternative, Plaintiff cannot maintain his claim for violation of Title III of the ADA against the individually named Defendants.

An ADA Title III claim may only be asserted against a public accommodation's "owner, lessor or operator." Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 542-43 (W.D. Pa. 2013). There are no allegations that any of the individually named Defendants "owned, leased, or operated" WPIC — the facility and public accommodation at issue. Accordingly, the individuals fall outside of the scope of coverage of Title III of the ADA and are not subject to personal liability. See Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002) (affirming dismissal of Title III claims individual defendants who did not "control" or "conduct the affairs" of the defendant institution). If not dismissed as a whole, Count I against the individually named Defendants should be dismissed for failure to state a claim.

### B. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO FILE A CERTIFICATE OF MERIT

Counts II, III, and IV of Plaintiff's Complaint assert claims for false imprisonment, assault/battery and invasion of privacy, respectively. Each of these claims stems from Defendants' initiation of the involuntary mental health commitment procedures. Plaintiff asserts that WPIC and the individual healthcare providers involved in the involuntary treatment misdiagnosed his condition and implemented restraints and sedation measures

against his will. Although not labeled as medical negligence, Plaintiff has undoubtedly challenged the medical treatment decisions made by the healthcare-provider Defendants. Therefore, in order to pursue these state law claims, Plaintiff must file certificates of merit against the Defendants.

In Pennsylvania, a plaintiff who brings an action based on "an allegation that a licensed professional deviated from an acceptable professional standard" must file a certificate of merit within sixty days of the filing of the complaint. Pa. R. Civ. P. 1042.3. This requirement applies equally to state law claims brought in federal courts. Iwanejko v. Cohen & Grigsby, P.C., 249 Fed. Appx. 938, 944 (3d Cir. 2007); Velazquez v. UPMC Bedford Memorial Hosp., 328 F. Supp. 2d 549 (W.D. Pa. 2004).

The certificate of merit must attest to the colorable merit of the claim(s) by including one of the following statements: (1) that "an appropriate licensed professional" has supplied a written statement that there is a reasonable probability that the defendant's conduct fell outside acceptable professional standards; (2) that the claim against the defendant is based solely on allegations against other professionals for whom the defendant is responsible; or (3) that expert testimony is unnecessary for prosecution of the claim. Pa. R. Civ. P. 1042.3.[2]

The certificate of merit requirement applies to Counts II-IV of the Complaint against Defendants, regardless of the labels affixed to them. Under Pennsylvania law, the substance of the complaint, not its form, determines whether the claim sounds in professional negligence. French v. Commonwealth Assocs., 980 A.2d 623, 631 (Pa. Super. 2009); see also Walsh v. Consol. Design & Eng'g., Inc., 2007 WL 2844829 (E.D. Pa. Sept. 28, 2007) ("The

---

[2] Expert testimony would clearly be required for the claim that medical professionals deviated from the standard of care in assessing and involuntarily committing a patient who, even assuming the truth of the allegations in the Complaint, was displaying concerning behavior while on the job as a psychiatric nurse.

13

requirement of filing a certificate of merit attaches not by the wording of the complaint, but by the substance of the claim"); Cappelli v. United States, 2006 WL 8459594 (E.D. Pa. July 28, 2006) (allowing plaintiff to re-characterize his claim as one of battery, but requiring a certificate of merit). It does not matter that Plaintiff's Complaint does not expressly assert a cause of action for "professional negligence," since Plaintiff has clearly asserted allegations that the conduct of the healthcare-provider Defendants fell below accepted professional standards. Plaintiff's claims criticize professional medical judgment in initiating and conducting an assessment for an involuntary psychiatric commitment. These allegations undoubtedly require expert testimony to establish inappropriate conduct. Pennsylvania law requires the filing of a certificate of merit in order to permit Plaintiff to proceed with such claims.

Pursuant to the certificate of merit rules, on April 7, 2023, Defendants filed a Notice of Intent to Seek Dismissal of Professional Liability Claims for Failure to File a Certificate of Merit. The Notice confirmed that, unless a certificate of merit was filed within thirty days of filing, Defendants would seek dismissal of Counts II-IV. (ECF Doc. 8). The thirty day period from the filing of the Notice lapses on May 8, 2023. Assuming that Plaintiff fails to file a certificate of merit substantiating expert support by May 8, 2023, Plaintiff's claims for False Imprisonment, Assault/Battery, and Invasion of Privacy should be dismissed with prejudice.

**C.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS.**

In Count V of the Complaint, Plaintiff asserts a claim for tortious interference with contractual relations against all Defendants. Plaintiff's basis for this claim arises from Defendants' alleged refusal to "permit [him] union representation" during the alleged incident. (ECF Doc. 1 ¶ 88). In other words, Plaintiff claims that the Defendants violated the

14

Collective Bargaining Agreement between WPIC and "the union representing plaintiff" by requesting a drug screen without a union representative present. Plaintiff cannot state a claim on this basis.

The elements of tortious interference with a contractual relationship are: (1) the existence of a contractual relationship between the plaintiff and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damage as a result of defendant's conduct. <u>Empire Trucking Co., Inc. v. Reading Anthracite Co.</u>, 71 A.3d 923, 933 (Pa. Super. 2013).

The only contract identified in Plaintiff's Complaint is the Collective Bargaining Agreement between his union and Defendant. (ECF Doc. 1 ¶¶ 27, 87). Plaintiff is not a party to this Collective Bargaining Agreement. Because Plaintiff is not a party to the Collective Bargaining Agreement, he does not have standing to raise interference with this agreement. Moreover, a tortious interference claim cannot be asserted against a party to the agreement. <u>See</u> <u>Kernaghan v. BCI Communs. Inc.</u>, 802 F. Supp. 2d 590, 597 (E.D. Pa. 2011) ("Under Pennsylvania law, a claim for tortious interference will survive only if a defendant is not a party to the contract alleged to have been tortiously interfered with."). Because WPIC is alleged to be one of the two parties to the Collective Bargaining Agreement, WPIC cannot "interfere" with this contract. For both of these reasons, Plaintiff's claim for tortious interference with the Collective Bargaining Agreement fails as a matter of law. <u>See</u> <u>Chauffers. Teamsters & Helpers Local No. 391 v. Terry</u>, 494 U.S. 558, 568 (1990) (stating that "an employee cannot sue his employer for a breach of the collective bargaining agreement").

15

Additionally, Plaintiff's tortious interference claim is preempted because it is substantially dependent on interpretation of the Collective Bargaining Agreement. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts any state law claim whose resolution depends upon the terms of a collective bargaining agreement. <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405-06 (1988); <u>Angst v. Mack Trucks, Inc.</u>, 969 F.2d 1530, 1536 (3d Cir. 1992).

Plaintiff asserts that Defendants interfered with his right to union representation. (ECF Doc. 1 at ¶¶ 27, 36-37). But in order to establish such a claim, Plaintiff would need to prove that he was entitled to union representation during the circumstances set forth in the Complaint. In other words, Plaintiff's interference claim depends on the terms of the Collective Bargaining Agreement. As such, this claim is preempted by federal law. See <u>Furillo v. Dana Corp. Par. Div.</u>, 866 F. Supp. 842, 846 (E.D. Pa. 1994) (preempting state law claim which is "inextricably intertwined with consideration of the terms of a labor contract").

Additionally, because Plaintiff is asserting that he was wrongfully denied a union representative, his remedy is limited to either filing a grievance regarding that denial and/or to filing an unfair labor practice charge with the National Labor Relations Board alleging a violation of Section 8(a)(1) of the National Labor Relations Act (NLRA). See <u>Angst</u>, 969 F.2d at 1537 ("Under federal labor law, aggrieved employees must exhaust their CBA's grievance and arbitration procedures before filing a complaint in federal court."). For all of these reasons, Count V of the Complaint should be dismissed with prejudice.

### IV. CONCLUSION

This lawsuit cannot survive a Motion to Dismiss. Plaintiff cannot recover damages pursuant to the ADA, and he has no standing to seek injunctive relief. Plaintiff has failed to

adequately plead that he was discriminated against on the basis of disability or that he was deprived of services by the Defendants due to his alleged disability. Beyond the ADA claim, Plaintiff cannot pursue claims for false imprisonment, battery/assault and invasion of privacy because he has not filed a requisite certificate of merit in support. Finally, Plaintiff is precluded from raising a tortious interference claim which derives from a Collective Bargaining Agreement.

The facts alleged do not set forth valid legal claims, federal or state. The Complaint should be dismissed.

DICKIE, McCAMEY & CHILCOTE, P.C.

By: */s/ Jeffrey J. Wetzel*

Jeffrey J. Wetzel
PA I.D. # 92843
jwetzel@dmclaw.com

Thomas H. May
PA I.D. # 25953
tmay@dmclaw.com

Steven L. Ettinger
PA I.D. # 316266
settinger@dmclaw.com

Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
(412) 281-7272

Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE REGARDING MEET AND CONFER

Pursuant to this Honorable Court's Practices and Procedures effective October 29, 2020, Defendants hereby certify that, by and through their attorneys, Dickie, McCamey & Chilcote, P.C., Jeffrey J. Wetzel, Esquire, Thomas H. May, Esquire and Steven L. Ettinger, Esquire, Defendants made good faith efforts to confer with Plaintiff, by and through his attorneys, Joel S. Sansone, Esquire, Massimo A. Terzigni, Esquire and Elizabeth A. Tuttle, Esquire, to determine whether the deficiencies identified in Defendants' Motion to Dismiss could properly be cured by amendment of Plaintiff's Complaint.

DICKIE, McCAMEY & CHILCOTE, P.C.

By: _/s/ Jeffrey J. Wetzel_
    Jeffrey J. Wetzel

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Jeffrey J. Wetzel, Esquire, hereby certify that a true and correct copy of the foregoing Brief in Support of Motion to Dismiss, has been served this 8th day of May, 2023, to all counsel of record via ECF.

DICKIE, McCAMEY & CHILCOTE, P.C.

By: */s/ Jeffrey J. Wetzel*
Jeffrey J. Wetzel

Attorneys for Defendants