**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AARON DIAMOND, )
)
Plaintiff, )   2:23-CV-361
)
v. )
)
UNIVERSITY OF PITTSBURGH )
MEDICAL CENTER (UPMC); )
WESTERN PSYCHIATRIC )
INSTITUTE AND CLINIC; )
HEATHER SICKMUND; F/LNU; )
and JOHN/JANE DOE(S), )
)
Defendants. )

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Plaintiff Aaron Diamond, formerly employed by Defendant Western Psychiatric Institute and Clinic as a nurse, suffers from several disabilities. These disabilities, Mr. Diamond contends, affect his speech and thinking and cause him to appear, at times, inebriated. Despite disclosing these disabilities to his former employer and superiors, Mr. Diamond alleges that his coworkers used the manifestation of those disabilities to improperly detain him, physically assault him, and subject him to an involuntary mental health commitment examination.

For those actions, Mr. Diamond brings this case against Western Psych (a division of Defendant University of Pittsburgh Medical Center) and former coworkers Heather Sickmund, F/LNU, and John/Jane Doe(s) for: (1) violations of the Rehabilitation Act, 29 U.S.C. § 794 (Count I); (2) false imprisonment (Count II); (3) assault and battery (Count III); (4) invasion of privacy (Count IV); and (5) wrongful termination (Count V).

Defendants have filed a Rule 12(b)(6) motion to dismiss. As to Mr. Diamond's Rehabilitation Act claim, Defendants argue: (1) a Rehabilitation Act disability claim

cannot arise out of the involuntary-commitment process; (2) Mr. Diamond has not pled that he is an "individual with a disability" as defined by the Rehabilitation Act; (3) Mr. Diamond has not pled intentional discrimination to recover compensatory damages; and (4) Mr. Diamond has not specified the "benefits" he was denied as required by the Rehabilitation Act.   As to Mr. Diamond's state-law claims, Defendants argue: (1) Mr. Diamond's state-law claims require him to file a certificate of merit, which he has failed to do; (2) Mr. Diamond's wrongful-termination claim is preempted by statute; and (3) Mr. Diamond's wrongful-termination claim fails because he does not allege a public policy that has been violated.

After careful review, the Court grants in part and denies in part Defendants' motion to dismiss.   Mr. Diamond has plausibly pled the elements of a Rehabilitation Act claim.   At least portions of Mr. Diamond's state-law claims do not unequivocally sound in professional negligence, and so no certificate of merit is necessary for certain aspects of those claims, which will be explained below.   The Court will, however, grant Defendants' motion to dismiss Mr. Diamond's wrongful-termination claim in its entirety, because it is preempted by other statutory remedies.

## BACKGROUND

Accepting as true the allegations in the amended complaint, Mr. Diamond began his employment with Western Psych in 2017.   ECF 19, ¶ 11.   At that time, he disclosed to his superiors and members of Western Psych's human resources department that he suffered from several mental impairments, including ADHD, dyslexia, and a non-specific cognitive learning disability that affects his "speech and communication skills" and causes his speech to be "slow[] and frequently slurred, giving the false appearance that [he] is under the influence of drugs or alcohol."   *Id.* ¶¶ 13-14.

Though his disabilities manifested on "numerous occasions" since, Mr. Diamond properly and fully performed his duties as a nurse, without any reports or

adverse actions taken against him because of his disabilities. *Id.* ¶¶ 15-16. On March 6, 2021, that changed. During the start of his shift in the eating-disorder unit, Mr. Diamond—then working as a "charge nurse" responsible for supervising and directing the actions of other nurses—discovered and remedied a potentially life-threatening patient safety issue. *Id.* ¶¶ 16-17. When he reported that event to his coworkers, including his immediate supervisor, Defendant Sickmund, and weekend supervising staffing manager, Defendant F/LNU, the symptoms of his disabilities manifested, and he appeared intoxicated. *Id.* ¶¶ 6-7, 19-22.

After reporting the incident, Mr. Diamond was asked to meet with Western Psych employees, including Ms. Sickmund and Defendant F/LNU. *Id.* ¶ 23. During that conversation, the employees questioned Mr. Diamond about his mental condition and possible impairment by drugs and alcohol. *Id.* They did so even though they allegedly knew or should have known of Mr. Diamond's disabilities, given his prior disclosure of them and because certain defendant employees, including Ms. Sickmund and Defendant F/LNU, had seen his disabilities manifest on other occasions. *Id.* ¶¶ 14-15, 23-24.

This interaction escalated. Ms. Sickmund requested that Mr. Diamond provide a blood sample, presumably to determine whether Mr. Diamond was inebriated. *Id.* ¶ 26. Mr. Diamond refused and, after further discussion, requested permission from Ms. Sickmund to leave the hospital for a short break. *Id.* ¶¶ 27, 31. Ms. Sickmund denied his request to leave, the defendant employees "enlisted the aid" of multiple security personnel to attend the discussion, and Mr. Diamond entered an elevator to exit the hospital. *Id.* ¶¶ 30, 32. The defendant employees entered the elevator with Mr. Diamond, and security personnel stopped the elevator at a floor used to "secure persons deemed to be a security risk." *Id.* ¶ 32. When Mr. Diamond then tried to leave the hospital through a stairwell, the defendant employees surrounded him and forcibly removed his employee security badge and keys. *Id.* ¶¶ 34-36. They then

forcibly restrained him, injected him with anti-psychotic medication against his will, and strapped him to a gurney.  *Id.* ¶¶ 37-42.  Mr. Diamond lost consciousness and did not wake until the next day.  *Id.* ¶ 43.

Sometime during these events, the defendant employees applied to hospital officials to subject Mr. Diamond to an involuntary emergency mental health examination under the Mental Health Procedures Act (MHPA), 50 Pa. Stat. Ann. § 7302 , known as a "302 examination."  *Id.* ¶ 44.[1]  The relevant officials apparently granted the application, as following Mr. Diamond's loss of consciousness, Western Psych medical personnel began the 302 examination.  *Id.* ¶¶ 44-45.[2]  As part of this process, Western Psych employees collected and tested Mr. Diamond's blood and urine, administered various medications and diagnostic exams, including a full examination of his nude body, and forced him to provide a complete medical history.  *Id.* ¶ 47.

At the end of the 302 examination, the attending physician concluded Mr. Diamond did not qualify for involuntary commitment, and Mr. Diamond was permitted to leave.  *Id.* ¶¶ 49, 52-53.  Mr. Diamond was, however, diagnosed with drug-related dysarthria (difficulty speaking) and substance-induced psychosis.  *Id.* ¶¶ 50-51.

Several days later, Mr. Diamond was asked to return to Western Psych.  *Id.* ¶ 56.  Upon the advice of his union, Mr. Diamond applied for and was placed on FMLA leave, as he did not feel safe returning to work.  *Id.* ¶¶ 57-58.  On September 30, 2021,

---

[1] The purpose of the 302 examination is to determine whether the patient should be involuntarily committed.

[2] Mr. Diamond's amended complaint is unclear on this point, but it appears the examination continued after Mr. Diamond awoke, given that he allegedly provided a medical history, was subject to a suicide risk severity analysis, and underwent a mental health status examination.  *Id.* ¶ 47.

when his leave ended, Mr. Diamond resigned from his employment, on the apparently false assurance of his union that they would file a grievance on his behalf.  *Id.* ¶ 59.

Mr. Diamond alleges that he suffered several physical, mental, and emotional effects due to this ordeal.  *Id.* ¶¶ 48, 54.  On March 5, 2023, he filed a complaint in this Court, claiming Defendants violated the Americans With Disabilities Act (ADA), 42 U.S.C. § 12182, and bringing state-law claims of false imprisonment, assault and battery, invasion of privacy, and tortious interference with contractual relations. ECF 1.

Defendants filed a motion to dismiss (ECF 9), which the Court terminated when it granted Mr. Diamond's motion for leave to file an amended complaint.  ECF 17; ECF 18.  Mr. Diamond filed his amended complaint on June 20, 2023, replacing his ADA claim with a claim under the Rehabilitation Act, and his tortious-interference claim with a state-law wrongful-termination claim, and leaving the prior state tort claims intact.  ECF 19.

Defendants filed a motion to dismiss the amended complaint on July 19, 2023. ECF 22.  Mr. Diamond filed his opposition on August 24, 2023 (ECF 28), and Defendants filed a reply on August 31, 2023.  ECF 29.  So the motion is ready for disposition.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Any reasonable inferences should be considered in the light most favorable to the plaintiff.  *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

## DISCUSSION & ANALYSIS

**I.    Mr. Diamond plausibly alleges a Rehabilitation Act claim.**

Though certain aspects of his Rehabilitation Act claim are thin, Mr. Diamond has nonetheless sufficiently alleged a plausible Rehabilitation Act claim such that it survives Defendants' motion to dismiss.[3]

To assert a claim under Section 504 (29 U.S.C. § 794) of the Rehabilitation Act, Mr. Diamond must demonstrate that: (1) he is disabled; (2) he is otherwise qualified for participation in a program or activity; (3) the program or activity receives federal financial assistance; (4) he was denied the benefits of or subject to discrimination under the program or activity; and (5) the denial of benefits or discrimination was solely by reason of his disability.  *See Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991); 29 U.S.C. § 794(a).[4]

In their motion to dismiss, Defendants challenge the first, fourth, and fifth elements—that is, everything except that Mr. Diamond is an "otherwise qualified" individual and that the program or activity receives federal financial assistance.  The

---

[3] "Title II [of the ADA] and its implementing regulations incorporate the nondiscrimination principles of the Rehabilitation Act, and the statutes' core provisions are substantively identical[.]" *Disability Rts. N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 n.3 (3d Cir. 2015) (cleaned up). Consequently, courts "often address both claims in the same breath," and apply cases examining the statutes interchangeably.  *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up) (quoting *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)).

[4] Section 504(a) of the Act states in part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a).

Court addresses Defendants' arguments on each contested element below.

### A.   Mr. Diamond plausibly alleges he has a disability.

The Rehabilitation Act defines "individual with a disability" "as someone who (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Bush v. Donahoe*, 964 F. Supp. 2d 401, 415 (W.D. Pa. 2013) (Lenihan, M.J.); 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1).[5]  "Congress directed courts to interpret the term 'disability' broadly 'to the maximum extent permitted by the terms of this chapter.'" *Ostrowski v. Con-Way Freight, Inc.*, 543 F. App'x 128, 131 (3d Cir. 2013) (quoting 42 U.S.C. § 12102(4)(A)); *see also* 28 C.F.R. § 36.101(b) ("[T]he definition of 'disability' in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. . . .  The question of whether an individual meets the definition of 'disability' under this part should not demand extensive analysis."); 29 C.F.R. § 1630.1(c)(4) (same).[6]

Only the first definition is at issue here.  "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner to most people in the general population." *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir. 2018) (citing

---

[5] In defining "individual with a disability," the Act refers to the ADA's (42 U.S.C. § 12102) definition of "disability."  29 U.S.C. § 705(20)(B).

[6] The Equal Employment Opportunity Commission and Department of Justice share authorization to promulgate regulations pertaining to the ADA (EEOC with respect to Title I, and DOJ with respect to Titles II and III).  *Love v. L. Sch. Admission Council, Inc.*, 513 F. Supp. 2d 206, 223 n.19 (E.D. Pa. 2007).  For the Court's purposes here, both are essentially identical.  *See, e.g.*, *Ramsay v. Nat'l Bd. of Med. Examiners*, No. 19-2002, 2019 WL 7372508, at *9 n.9 (E.D. Pa. Dec. 31, 2019), *aff'd*, 968 F.3d 251 (3d Cir. 2020) (noting definitional sections of both regulations "nearly mirrors that contained in the statute itself").

29 C.F.R. § 1630.2(j)(1)(ii) (cleaned up)).  The term "substantially limits" is construed "broadly in favor of expansive coverage," and this "threshold issue . . . should not demand extensive analysis."  29 C.F.R. § 1630.2(j)(1)(i), (iii); *see also* 28 C.F.R. § 36.105(d)(1)(i)-(ii) (same).

At the motion-to-dismiss stage, a plaintiff need not "go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (holding that plaintiff satisfied this pleading burden when she alleged an impairment, that defendant knew of impairment, and the impairment limited her ability to perform sedentary work).  As relevant to Mr. Diamond's claims, "major life activities include, but are not limited to . . . speaking, . . . thinking, [and] communicating[.]"  42 U.S.C. § 12102(2)(A).

Defendants contend Mr. Diamond only "vaguely alleges" that he has mental impairments that substantially limit life major life activities.  ECF 23, p. 9.  The Court disagrees.  In his amended complaint, Mr. Diamond alleges a mental impairment (ADHD, dyslexia, a cognitive learning disability),[7] a major life activity (speaking, communicating, thinking), and substantial impairment of those major life activities (his speech and communication is slow and slurred enough that he appears inebriated).  ECF 19, ¶¶ 13, 67.

That is enough to satisfy his burden at this early stage.  The Court therefore

---

[7] Defendants do not raise this issue, but the Court notes that Mr. Diamond's "non-specific cognitive learning disability" may not qualify as an eligible mental impairment.  The applicable regulations define "physical or mental impairment" by reference to any "***specific*** learning disability," so it would appear that something called a "non-specific disability" doesn't count.  28 C.F.R. § 36.105(b)(1)(ii), (b)(2); 29 C.F.R. § 1630.2(h) (emphasis added).  While somewhat imprecise, Mr. Diamond's complaint adequately ties the speech and communication problems to not only the non-specific learning disability but also the "aforementioned disabilities," such that the Court finds that he has sufficiently pled a "disability" at this stage in the proceedings.  ECF 19, ¶¶ 15-16, 22.

holds that Mr. Diamond has alleged a disability under the Rehabilitation Act.

### B. Mr. Diamond plausibly alleges he was subjected to discrimination under a program or activity.

The Rehabilitation Act prohibits not only exclusion of a disabled individual from a program or activity but also discrimination generally under that program or activity. *See* 29 U.S.C. § 794(a); *see also Chisolm v. McManimon*, 275 F.3d 315, 330 (3d Cir. 2001) ("[T]he Rehabilitation Act . . . proscribes *discrimination* on the basis of disability without requiring exclusion *per se*." (emphasis original)). In other words, to meet this element of the statute, the plaintiff has two options—to show that he was denied certain benefits, or to show that he was subjected to discrimination.

Defendants argue that Mr. Diamond hasn't pled either option. ECF 23, pp. 5, 11. The Court agrees that Mr. Diamond has failed to identify a benefit he was denied under any program or activity of Defendants. But the Court finds Mr. Diamond has plausibly alleged he was subject to discrimination under a program or activity, and has therefore met his burden on this element.

### 1. Mr. Diamond has not alleged any denial of benefits of a program or activity.

"Section 504 of the [Rehabilitation Act] defines a 'program or activity' quite broadly to include '*all* of the operations of' a state instrumentality.'" *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019) (emphasis original) (quoting 29 U.S.C. § 794(b)). This "all-encompassing" definition "includes anything a[n applicable] entity does." *Id.* (quoting *Yeskey v. Com. of Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir. 1997) *aff'd sub nom.* 524 U.S. 206 (1998); *Disability Rts. N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015)). Appealing to this broad definition, Mr. Diamond asks the Court to consider his inability to leave Western Psych as the denial of a benefit offered by a program or activity. ECF 28, p. 13; *see also* ECF 19, ¶¶ 70-71. He argues that the benefit of rejecting treatment and leaving the facility is offered to patients, and he became a patient when he was "seiz[ed,]

anesthetiz[ed,] and [underwent] all of the invasive testing and other actions[.]"  ECF 19, ¶ 69.

Instructive in this regard is a decision by Judge Conti, where she rejected a similar interpretation of a "benefit."  *See Jarzynka v. UPMC Health Sys.*, No. 10-1594, 2011 WL 4565612, at *5 (W.D. Pa. Sept. 29, 2011) (Conti, J.)  In *Jarzynka*, the plaintiff alleged that Western Psych employees prevented him from leaving Western Psych's diagnostic evaluation center and, when he tried to escape, restrained him, and held him in a seclusion room for hours until a doctor discharged him.  *Id.* at *2. The plaintiff filed a claim under the Rehabilitation Act, arguing the "benefit" he was denied was the right to refuse treatment in violation of the MHPA.  *Id.* at *4-5.  Judge Conti disagreed, granting UPMC's motion to dismiss and explaining "benefit" is defined as an "advantage, help or service," and "UPMC was not offering the services of refusing treatment [but] medical services [the plaintiff] did not want[.]"  *Id.* at *5; *see also id.* ("[W]here the conduct at issue involves no treatment or service being sought, no benefit is being sought.  Refusing treatment is the antithesis of seeking treatment or a benefit, *i.e.* an advantage, help or service.").

So too here; Mr. Diamond is alleging the benefit of "refusing treatment" offered by Western Psych.  But, as Judge Conti found, refusing unwanted treatment isn't a "benefit."  The Court therefore rejects Mr. Diamond's argument for the same reasons Judge Conti did so in *Jarzynka*.[8]

---

[8] The Third Circuit has stated, in *dicta*, "we assume that the right to refuse medical treatment (or another such right, whether it be common-law or statutory) could be a service, program, or activity within the meaning of Title II [of the ADA]."  *Disability Rts. N.J.*, 796 F.3d at 302 (determining party abandoned that argument).  But there is no support to apply this *dicta* to an involuntary-commitment scenario, where the medical treatment is performed, by definition, irrespective of the patient's consent or request.  That is, this isn't a scenario of a patient of a hospital making an informed decision about what services to obtain or decline.  Under the somewhat unique scenario of an involuntary commitment involving an employee, the Court finds that *Jarzyanka* is the more sound application of the statute.

### 2. Mr. Diamond has plausibly alleged that he was subjected to discrimination under a program or activity.

Even though Mr. Diamond hasn't alleged a denial of a benefit, he satisfies the fourth element of the statute because he has pled discrimination.

The Third Circuit has described the ADA's similar "'subjected to discrimination' phrase" as "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." *Haberle v. Troxell*, 885 F.3d 170, 180 (3d Cir. 2018) (cleaned up).[9]  Discrimination includes, among other things, "adverse actions motivated by prejudice and fear of disabilities[.]"  *Id.* (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Mr. Diamond asserts that he was discriminated against "when he was involuntarily seized, anesthetized, and subjected to the invasive testing and other actions [during the 302 examination.]"  ECF 28, p. 13.  But as Defendants point out, "neither the ADA nor the Rehabilitation Act provide remedies for alleged medical negligence." *Rosario v. Washington Mem'l Hosp.*, No. 12-1799, 2013 WL 2158584, at

---

[9] The Third Circuit's interpretation of the phrase concerned the ADA, not the Rehabilitation Act.  But the Third Circuit, in doing so, borrowed language from an Eleventh Circuit case treating the terms of the ADA and Rehabilitation Act as coextensive (as the Third Circuit has often done).  *Id.* (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007)).

Unlike the ADA's catch-all provision, however, the Rehabilitation Act's version "is program specific.  It is not enough to show that a person has been discriminated against by a recipient of Federal funds.  It must also be shown that he was subject to discrimination under the program or activity for which those funds were received." *Pittsburgh Fed'n of Tchrs., Loc. 400 v. Langer*, 546 F. Supp. 434, 437 (W.D. Pa. 1982) McCune, J.) (cleaned up); *accord Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 44 (2d Cir. 1997) (discussing both the ADA and Rehabilitation Act and noting "Title II's anti-discrimination provision does not limit the ADA's coverage to conduct that occurs in the 'programs, services, or activities' of the [defendant]" but "prohibits all discrimination by a public entity, regardless of the context").  Accordingly, the Court treats the Rehabilitation Act's "subjected to discrimination" phrase as a catch-all, with the caveat that the discrimination must be under a program or activity for which the funds were received.

*14 (W.D. Pa. May 17, 2013) (Conti, J.) (quoting *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (holding plaintiff did not have Rehabilitation Act claim where he alleged only that he was denied being involuntarily committed)); *see also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("[The plaintiff] claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Hollinger v. Reading Health Sys.*, No. 15-5249, 2017 WL 429804, at *9 (E.D. Pa. Jan. 31, 2017) ("[Section] 504 of the [Rehabilitation Act] cannot be construed to provide a cause of action for medical treatment decisions." (collecting cases)).

Whether Mr. Diamond's Rehabilitation Act claim survives therefore depends on whether his allegations concern negligent medical treatment (not covered by the Act), or discrimination in the medical treatment context (covered by the Act). To answer this question, the Court finds as instructive the Second Circuit's framework in *McGugan v. Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014).

In that case, the Second Circuit held that "a plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA or the Rehabilitation Act if she alleges that the defendants made treatment decisions based on factors that are unrelated to, and thus improper to consideration of the inquiry in question." *McGugan*, 752 F.3d at 234 (cleaned up). Applying this standard, the Second Circuit concluded that the plaintiff did not allege that the defendants, in involuntarily hospitalizing and medicating her, improperly considered stereotypes about persons with mental illness. *Id.* at 232-33. Instead, the defendants properly considered evidence that she did not know who she was presently dating, she had acted violently towards an ex-boyfriend, she was uncooperative, and she was arrested by police upon landing after a commercial flight. *Id.* The court explained that "even if the defendants attributed excessive significance to" that evidence, it was appropriate for the defendants to consider in making the decision to treat the

-12-

plaintiff.  *Id.*

Here, Mr. Diamond has plausibly alleged that he was discriminated against under the Second Circuit's approach.  He alleges that the employee defendants knew of his disabilities and how they manifested, yet used that against him to restrain him, sedate him, and subject him to a 302 examination.  ECF 19, ¶ 24; ECF 28, p. 14. While discovery may bear out facts at odds with this or a more nuanced approach to the 302 examination, the Court must accept the allegations as pled.  Because Mr. Diamond has adequately pled that the manifestations of his disability were "improper to consideration of the inquiry in question," the Court finds that Mr. Diamond has sufficiently pled that he was "subjected to discrimination" under the Rehabilitation Act.  *McGugan*, 752 F.3d at 234.

Lastly, Mr. Diamond has alleged he was discriminated against under a "program or activity" under the Rehabilitation Act's "all-encompassing" definition of those terms.  *See Furgess*, 933 F.3d at 289 (3d Cir. 2019) (quoting *Yeskey*, 118 F.3d at 170).  Defendants' operations include providing 302 examinations and actions incident to those examinations.  In fact, Defendants categorize all conduct, whether occurring before or after the 302 examination began, as part of the "treatment" or "commitment process."  ECF 29, p. 2 & n.1.  Because Mr. Diamond alleges the discrimination was carried out through those operations, he has met his preliminary burden on this part of the element, as well.

Accordingly, Mr. Diamond has plausibly pled that he was discriminated against under Defendants' programs or activities.

### C.  **Mr. Diamond has plausibly pled that he was intentionally discriminated against solely because of his disability.**

"To plausibly allege discrimination, [Mr. Diamond] does not have to have detailed evidence.  For now, he need only give [Defendants] fair notice of his claim and raise the reasonable expectation that discovery will uncover evidence of

discriminatory motive." *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 230 (3d Cir. 2021) (cleaned up).

Mr. Diamond has met his burden. Mr. Diamond alleges that he told Defendants about his disability—including the employee defendants involved in the incident—and that it caused him to appear inebriated. Despite this knowledge, when Mr. Diamond's disability manifested, the employee defendants subjected him to the alleged discriminatory actions. That the employee defendants knew or should have known Mr. Diamond's disability caused him to appear inebriated is a fact that plausibly justifies the inference that Defendants discriminated against Mr. Diamond solely because of his disability. *Anderson Excavating, LLC v. Weiss World L.P.*, 638 F. Supp. 3d 525, 530 (W.D. Pa. 2022) (Stickman, J.), *aff'd sub nom. Anderson Excavating LLC v. Weiss World LP*, No. 22-3278, 2023 WL 8519209 (3d Cir. Dec. 8, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) ("The complaint . . . must support the inference with facts to plausibly justify that inferential leap.")).

Defendants argue that the employee defendants' actions are only reasonably attributed to "concerns about [Mr. Diamond's] mental status and potential impairment." ECF 23, p. 10. That flips the motion-to-dismiss standard. Defendants' contrary inference as to the reason for the allegedly discriminatory behavior may sound persuasive, but at this stage, the Court must credit Mr. Diamond's reasonable inferences, not Defendants'. *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 125 (3d Cir. 1998) (holding physician sufficiently pled he was plausibly discriminated against solely because of his disability with allegations that hospital knew of physician's ADHD and unfairly and disparately accused physician of policy infractions before suspending his privileges without notice or explanation, despite contrary inference that physician was suspended for raising concerns); *see also Zucal v. Cnty. of Lehigh*, No. 5:21-04598, 2023 WL 3997963, at *6 (E.D. Pa. June 14, 2023) ("On a Rule 12(b)(6) motion, however, it is the plaintiff's reasonable inferences that

must be credited." (cleaned up)).

As Mr. Diamond seeks compensatory damages under his Rehabilitation Act claim, he must also "show intentional discrimination under a deliberate indifference standard." *Furgess*, 933 F.3d at 289. Under that standard, Mr. Diamond must plead "(1) knowledge that a federally protected right is substantially likely to be violated" and "(2) failure to act despite that knowledge." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013). "Knowledge" in this context means "actual knowledge; thus, allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 194, 198 (3d Cir. 2013) (quoting *S.H.*, 729 F.3d at 266 n.26 (cleaned up)). Deliberate indifference "require[s] a deliberate choice, rather than negligence or bureaucratic inaction." *Id.* (cleaned up) (quoting *S.H.*, 729 F.3d at 263).

The same facts that support an inference that Defendants discriminated against Mr. Diamond solely because of his disability support an inference of intentional discrimination. Mr. Diamond alleged that Defendants knew of his disability and how it manifested and used the excuse of Mr. Diamond's conduct to permit his abuse. ECF 19, ¶¶ 72-73.[10] Mr. Diamond has therefore sufficiently alleged deliberate indifference. *See Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023) (plaintiff prisoner sufficiently pled deliberate indifference where he alleged he told prison officials of ambulatory disability but officials denied his cane and shower accommodations); *c.f. Shaika v. Gnaden Huetten Mem'l Hosp.*, No. 3:15-0294, 2015 WL 4092390, at *10 (M.D. Pa. July 7, 2015) (holding premature to dismiss on basis of deliberate indifference standard where plaintiff alleged defendants knew of disability and discriminated on basis of disability, and plaintiff requested discovery on the issue).

---

[10] Mr. Diamond's amended complaint restarts numbering at paragraph 72 on page 16. The Court refers to paragraphs 72-73 on page 15.

Mr. Diamond has therefore sufficiently pled, at this stage, the elements of a Rehabilitation Act claim.  Defendants' motion to dismiss that claim is denied.

## II.  Mr. Diamond's state-law claims for false imprisonment, assault and battery, and invasion of privacy survive the motion to dismiss, but Mr. Diamond's wrongful-termination claim is dismissed with prejudice.

Defendants argue that Mr. Diamond's state-law claims for false imprisonment, assault and battery, and invasion of privacy should be dismissed because Mr. Diamond failed to file a certificate of merit.  Defendants also challenge Mr. Diamond's wrongful-termination claim on two grounds: (1) that it is preempted, and (2) that Mr. Diamond does not allege a violation of public policy to sustain a wrongful termination cause of action for an at-will employment relationship.  ECF 23, pp. 13-17.

The Court holds that certain aspects of Mr. Diamond's state-law claims do not indisputably sound in medical or professional negligence and thus do not require a certificate of merit, but will dismiss Mr. Diamond's wrongful-termination claim as being preempted.

### A.  Mr. Diamond's failure to file a certificate of merit does not require dismissal of the entirety of state-law claims for false imprisonment, assault and battery, and invasion of privacy.

Defendants seek dismissal of Mr. Diamond's state-law intentional tort claims, arguing that those claims essentially sound in malpractice and thus require a certificate of merit to proceed.  The Court finds that at least certain aspects of these state-law claims do not require a certificate of merit, and so will not dismiss these claims in their entirety.

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff to file a certificate of merit with the complaint or within 60 days of filing the complaint "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard[.]"[11]  The certificate must attest that either (1) a

---

[11] The certificate of merit is a substantive law that federal courts must apply. *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262-64 (3d Cir. 2011).

licensed professional has submitted a written statement that the conduct in the complaint fell outside of professional standards and caused the plaintiff's harm; (2) the defendant is liable under a *respondeat superior* theory of liability; or (3) that expert testimony is unnecessary to prosecute the claim. Pa. R. Civ. P. 1042.3; *Manuel v. Wiles*, No. 20-1759, 2023 WL 9499970, at *12 (W.D. Pa. Dec. 20, 2023) (Kelly, M.J.), *report and recommendation adopted sub nom. Manuel v. Capozza*, No. 2:20-1759, 2024 WL 382659 (W.D. Pa. Feb. 1, 2024) (Cercone, J.).  A failure to file a certificate of merit dooms a professional-negligence claim.  *See* Pa. R. Civ. P. 1042.7; *Young v. Halligan*, 789 F. App'x 928, 931 (3d Cir. 2019) (failure to file certificate of merit "necessitated dismissal" of state-law claims).

The certificate-of-merit requirement does not apply, however, to claims based on intentional torts or ordinary negligence. *Ferencz v. Medlock*, 905 F. Supp. 2d 656, 673 (W.D. Pa. 2012) (Lenihan, M.J.) (collecting Pennsylvania state court cases).  But a court may not merely rest on a plaintiff's decision to style his claims as intentional torts; it must instead review the factual substance of the complaint to determine whether a professional negligence cause of action is alleged. *Doe v. Hosp. of Univ. of Pa.*, 546 F. Supp. 3d 336, 344 (E.D. Pa. 2021); *Varner v. Classic Cmtys. Corp.*, 890 A.2d 1068, 1074 (Pa. Super. Ct. 2006).

To determine whether a claim involves professional negligence, a court must ask: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322 (Pa. Super. Ct. 2007), (quoting *Grossman*, 868 A.2d at 570) *aff'd*, 17 A.3d 310 (Pa. 2011).  "If both these questions are answered in the affirmative," then a certificate of merit is required. *Id.*

Here, applying this two-pronged test, at least as to aspects of the claims, the claims do not implicate a professional relationship or exercise of medical judgment.

-17-

That is, much of the amended complaint is focused on the actions of Mr. Diamond's supervisor and other employees of the hospital who worked in concert with her—all who knew about Mr. Diamond's disabilities, but nonetheless restrained him and set in process the later 302 examination.  For these so-called "employee Defendants," Mr. Diamond does not need a certificate of merit.

This is so because these individuals were essentially acting in an employment capacity—*i.e.*, as supervisors of a hospital employee.  In the cases where courts have required a certificate of merit, there is some sort of healthcare relationship (*e.g.*, doctor-patient, or health care provider/patient).  *See, e.g.*, *Sutton v. Sec'y U.S. Dep't of Veterans Affairs*, No. 23-1414, 2024 WL 1281131, at *3 (3d Cir. Mar. 26, 2024) (plaintiff seeking medical treatment at clinic when clinician decided plaintiff's elevated heart rate warranted transport to a hospital); *Grant v. Agarwal*, No. 1077 WDA 2019, 2020 WL 916023, at *3 (Pa. Super. Ct. Feb. 25, 2020) (plaintiff's "claim arose out of a 'professional relationship' in that he sought medical treatment for a right orbital floor fracture").[12]

By contrast, here, Mr. Diamond alleges that he was an employee of the hospital, and during the course of his employment, his supervisor with others aiding her restrained, sedated, and sent him to be involuntarily examined.  That is not a professional relationship in which a professional negligence claim would lie, and a certificate of merit required.  To say otherwise would mean that an in-house attorney of the Mayo Clinic who was involuntarily committed while at his desk at work would be basically bringing a medical-malpractice claim.

Further, as for the second prong of the test, Mr. Diamond's amended complaint does not raise questions of medical judgment beyond the scope of a layperson's

---

[12] Indeed, as the Pennsylvania Supreme Court has explained, "[a] certificate of merit is not . . . required for professional liability actions brought by plaintiffs who are not *patients* or clients of a licensed professional."  *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 74 (Pa. 2014) (emphasis added).  And a "patient" is "one under medical care."  *Id.* at 75.

understanding as to the employee Defendants. A lawsuit alleging that Defendants weaponized the legitimate 302 examination process, and actions incident to that process, is not "predicated upon substandard medical treatment, that is, acts involving diagnosis, care and treatment by licensed professionals." *Smith v. Friends Hospital*, 928 A.2d 1072, 1076 (Pa. Super. Ct. 2007) (cleaned up) (no certificate of merit required for claims that plaintiff was sexually assaulted and beaten while hospitalized).

Mr. Diamond does not allege that the employee Defendants provided substandard care or deviated from a professional standard. Medical context notwithstanding, Mr. Diamond's claims are therefore within "the realm of common knowledge and expertise" such that expert testimony—and a certificate of merit—is unnecessary. *See, e.g.*, *Ferencz*, 905 F. Supp. 2d at 673 (declining to dismiss wrongful death and survival claims for lack of certificate of merit where it was not alleged licensed professional deviated from professional standard); *Carbone v. City of New Castle*, No. 2:15-1175, 2016 WL 406291, at *10 (W.D. Pa. Feb. 3, 2016) (McVerry, J.) (declining to dismiss medical battery claim for failure to file certificate of merit where physician performed cavity searches without consent); *Brownstein v. Gieda*, No. 3:08-1634, 2009 WL 2513778, at *5 (M.D. Pa. Aug. 13, 2009) (declining to dismiss medical battery claim for failure to file certificate of merit where plaintiff was restrained and his blood was drawn without consent).

But the same can't be said for other aspects of the claims. That is, while not very clearly pled, the amended complaint does seem to allege these same tort claims also against some of the medical professionals who ended up performing the 302 examination. *See* ECF 19, ¶¶ 8-9 (describing Doe defendants as those "who participated in the improper and unlawful conduct described herein"), ¶ 72 (each defendant "detained" Mr. Diamond), ¶ 77 (each defendant "commit[ed] a battery upon" Mr. Diamond "as more fully described hereinbefore above"), ¶ 81 (each

defendant "subjected [Mr. Diamond] to highly offensive, highly invasive conduct related to" Mr. Diamond's bodily, private medical information, and private business); *but see id.* at ¶¶ 45-46 ("Medical personnel," not "Defendants," "performed a 302 analysis"; no "individual Defendant" discussed Mr. Diamond's disabilities with "the medical personnel performing the 302 analyses").  For those Doe medical professionals who later came on the scene, there was a professional treatment relationship at that time, and the nature of the claims (*i.e.*, the standard of care in performing the 302 examination) implicates medical judgment.  *See Sutton*, 2024 WL 1281131, at *3 (holding emergency medical technicians arrived at clinic in professional capacity and their actions raised questions of medical judgment beyond realm of common knowledge and experience).  Thus, to the extent that Mr. Diamond's state law tort claims are being asserted against these treatment provider Defendants, those claims cannot proceed without a certificate of merit, and will be dismissed.

### B.   Mr. Diamond's wrongful-termination claim is preempted.

Unlike his other claims, Mr. Diamond's wrongful-termination claim fails as a matter of law and must be dismissed.

An at-will employee does not have a common law cause of action for wrongful termination under Pennsylvania law unless his discharge "would threaten clear mandates of public policy." *Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793, 798-99 (3d Cir. 2010) (quoting *Clay v. Advanced Comput. Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989)).  An employee must rely on a public policy derived from Pennsylvania's "Constitution, court decisions, and statutes." *Id.* (quoting *Weaver v. Harpster*, 975 A.2d 555, 566 (Pa. 2009)).

In application, the Third Circuit has identified "three limited circumstances" where public policy prevails: (1) an employer requires an employee to commit a crime; (2) an employer prevents an employee from complying with a statutorily imposed duty; and (3) a statute specifically prohibits the employer from discharging the

employee.  *Id.* at 799 (quoting *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003)).

This public-policy exception is only available, however, if a plaintiff does not have a statutory remedy.  *See Gillispie v. RegionalCare Hosp. Partners Inc*, 892 F.3d 585, 597 (3d Cir. 2018); *Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 65 (3d Cir. 2020) (statutory remedies preempted wrongful-termination claim where wrongful termination claim was "based on the same facts" as plaintiff's statutory discrimination and retaliation claims and "would not protect any additional interest beyond the protections" of those statutes).  "It is the existence of the remedy, not the success of the statutory claim, which determines preemption."  *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 941 (3d Cir. 2003) (cleaned up) (quoting *DeMuro v. Phila. Hous. Auth.*, No. 98-3137, 1998 WL 962103, at *5 (E.D. Pa. Dec. 22, 1998)).

Here, as outlined above, Mr. Diamond has a statutory claim under the Rehabilitation Act.  This claim is "based on the same set of facts" as the wrongful-termination claim: discrimination disability.  Mr. Diamond concedes as much in his amended complaint.  *See* ECF 19, ¶¶ 61, 91 ("As the abusive and illegal conduct of the Defendants, which led to Plaintiff's constructive discharge, violates federal and state laws, as described herein; their conduct, ***for the same reasons***, also violates mandates of public policy." (emphasis added)).  Thus, the wrongful-termination claim is preempted.  *Brandon v. UPMC Presbyterian Shadyside*, No. 2:22-1671, 2023 WL 3093415, at *2 (W.D. Pa. Apr. 26, 2023) (Horan, J.) (dismissing wrongful termination claim "[b]ecause the PHRA and ADA already recognize a cause of action for wrongful termination based on disability discrimination"); *Smith v. Smith Transp., Inc.*, No. 3:20-250, 2022 WL 2872464, at *4 (W.D. Pa. July 21, 2022) (Haines, J.) (holding wrongful discharge claim preempted by ADA and PHRA where "the facts pleaded . . . [were] facially and fundamentally the same facts").

Relatedly, even if the claim weren't preempted, it still fails, because Mr. Diamond fails to identify with any specificity a public policy that would support his claim.  "[T]he sources of public policy [Mr. Diamond] relies on are coterminous with his statutory claims[.]"  *Petti*, 831 F. App'x at 65 (quoting in parenthetical *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 73 (3d Cir. 1996)).  Again, his amended complaint expressly ties the public policy to a violation of the Rehabilitation Act.  *See* ECF 19, ¶¶ 61, 91.

For these reasons, Mr. Diamond's wrongful-termination claim will be dismissed.  In addition, given that Mr. Diamond has already amended his complaint once, had an opportunity to amend again in response to the motion to dismiss, and the defect here is a legal one, the Court will dismiss the claim with prejudice.  Further leave to amend would be futile.

## **CONCLUSION**

For the above reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss (ECF 22).  A separate order follows.

Date: April 11, 2024                                    BY THE COURT:

                                                       /s/ J. Nicholas Ranjan
                                                       United States District Judge